**JARRETT et al. v. NORFOLK REDEVELOPMENT AND HOUSING AUTHORITY.**

Civil Action No. 724.

District Court, E. D. Virginia, at Norfolk.

Nov. 21, 1947.

Louis B. Fine, of Norfolk, Va., for plaintiff.

Edward R. Baird, Jr., of Norfolk, Va., for defendant.

BARKSDALE, District Judge.

This action is before me upon defendant's motion for summary judgment, with

supporting affidavits and documents, and the plaintiffs' answers in opposition thereto accompanied by a supporting affidavit. The action was instituted on June 19, 1947, and shortly thereafter, on July 7, 1947, defendant filed its motion to dismiss accompanied by a copy of the contract executed by the defendant and the Federal Public Housing Authority, and upon that state of the record the Honorable John Paul heard argument upon the motion to dismiss, and by his order entered September 23, 1947, denied the motion to dismiss for reasons set out in a written memorandum filed therewith. Since that time, the defendant has filed its answer and also affidavits and documents supporting its motion to dismiss, and plaintiffs have filed an affidavit, so it is obvious that the record has been very much amplified, and the factual situation upon which the controversy is based, much more clearly appears than when Judge Paul denied defendant's motion to dismiss. As Judge Paul was careful to point out in the concluding paragraph of his memorandum:

"All that the court is now deciding is that the complaint sufficiently states a cause of action involving the applicability or construction of a federal statute, which gives jurisdiction in this court and requires that the motion to dismiss be denied."

After hearing extensive oral argument on defendant's pending motion for summary judgment and giving the matter careful consideration, I am satisfied that the essential facts which are the basis of this controversy now fully appear from the record as presently constituted, that there is no genuine issue as to any material fact, and that the defendant is entitled to a judgment as a matter of law under the provisions of Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. As I will enter judgment for the defendant upon its motion, I am not required to file findings of fact and conclusions of law under Rule 52, F.R.C.P. However, I do think it desirable that I state briefly the reasons for my conclusion.

As set out by Judge Paul in his opinion, this action was instituted by certain tenants of a housing project known as "Merrimack Park," owned and operated by defendant, seeking a declaratory judgment as to their rights with respect to certain proposed increases in the rental of the housing accommodations occupied by them, as well as other increases theretofore made. It appears that the defendant is a body corporate created under the provisions of Section 3145(1) et seq., of the Code of Virginia, and operates under the provisions of this statute, the provisions of the United States Housing Acts, 42 U.S.C.A. §§ 1401–1430, and 42 U.S.C.A. §§ 1501–1564. The personnel of the defendant Authority consists of five of the leading public spirited citizens of Norfolk who were appointed by the Mayor and serve without pay.

It might be well to state at this point that the plaintiffs, by counsel, not only do not charge, but vigorously disclaim, any suggestion of fraud or other misconduct on the part of the Authority or the Federal Public Housing Administration. Plaintiffs base their contentions upon the theory that, in adopting its policy, the defendant Authority has misconstrued the applicable law and contract provisions.

It appears that in the creation and development of the Merrimack Park Housing Project, the defendant took advantage of the financial assistance offered by the Federal Government under the provisions of the United States Housing Act, 42 U.S.C.A. §§ 1401–1430, and, to accomplish this end, entered into a contract with the Federal Public Housing Authority relating to this financial aid. The initial purpose of the Project was that it should provide "Low Rent Housing" as a part of a program of "Slum Clearance". However, almost immediately the demand for housing of those engaged in national defense activities in this area became so acute that the Project was converted into a low rent housing project for persons engaged in defense activities as provided for under the provisions of 42 U.S.C.A. § 1501 et seq. Consequently, Merrimack Park, as a result of the war emergency, has always been, and still is, tenanted primarily by Naval personnel. However, it is contemplated that when the war emergency ceases to exist, Merrimack Park will revert to its character as a "Low Rent Housing Slum Clearance"

Project, and will be occupied by tenants in a much lower financial stratum than its present occupants.

From what has been already said, it is quite obvious that the defendant cannot operate Merrimack Park with even that degree of freedom now enjoyed by a private owner of an apartment house in his dealings with his tenants. The defendant, in its operation of this project, is controlled and governed by the Virginia statutes, the Federal Housing Acts, and the contract entered into by the local Authority with the Federal Public Housing Authority when it applied for and obtained financial assistance from the Federal Government.

It appears that, as of September 1, 1945, and July 1, 1947, the rents prevailing in the Merrimack Park Project were raised. In thus raising the rents, plaintiff tenants contend that the defendant Authority contravened the applicable statutory and contract provisions.

■ Section 3145(8), Code of Virginia, provides, inter alia, that the defendant Authority shall have the power " * * * to establish and revise the rents" in its housing projects. Under the provisions of Article III, Section 3.01, the Authority is required, upon request, to submit its Management Program including "The Schedule of Rentals * * *" to the Federal Public Housing Authority, and likewise to submit any proposed changes for approval ninety days before such changes are to become effective, and when approved, such Management Program, including the Schedule of Rents, shall constitute the "Management Program for the Project." It therefore seems quite clear that the defendant Authority, in the first instance, and subject to the limitations indicated, has the power and duty of establishing rentals, and the burden of demonstrating that the two raises here in controversy were unauthorized, devolves upon the plaintiffs.

In their effort to demonstrate the illegality of the rental increases here in controversy, the plaintiffs' contentions, briefly stated, seem to be:

(1) That the defendant Authority is required to fix its rentals on such a basis as to make full use of the "Annual Contribution", or subsidy, of the Federal Government provided for in the Contract, and that the increased rentals will provide sufficient revenue in the immediate future to obviate the necessity of using the Federal subsidy.

(2) That under the provisions of 42 U.S. C.A. § 1504, the fixing of rentals in this Project is within the jurisdiction of the War or Navy Department, and that neither the War nor the Navy Department fixed or approved the increased rentals here in controversy.

(3) That the Office of Price Administration had no jurisdiction or control over the fixing of these increased rentals, as jurisdiction to fix or approve such increases was exclusively within the province of the War or Navy Department, and if the Office of Price Administration did have the control of such rentals, it acted erroneously in approving the increases because the rental rates approved were higher than for comparable property within the same area, and in particular, higher than the rentals prevailing in the Ben Moreel Housing Project.

(4) That increased rentals will provide enough revenue to amortize the costs of the Project in less than sixty years, and that the Authority is required to fix the rentals at such rates as to amortize the Project within sixty years.

I am of the opinion that none of these contentions is sound, and my views in regard thereto, stated seriatim, are as follows:

(1) The contract provides (Sec. 5.01):

"To assist the local Authority in achieving, maintaining, and assuring the Low-Rent character of the Project, the FPHA agrees, subject to the provisions hereinafter contained, to make annual contributions to the local Authority * * *",

which annual contribution as to the Merrimack Park Project is calculated to be an amount not in excess of 1.3 per cent.

Section 3.07 of the Contract is as follows:

"The local Authority covenants that the Project will not be operated for profit and that it will fix the rentals for dwellings

in the Project at rates sufficient, but no higher than sufficient, to produce revenues which (together with the annual contributions provided for herein and all other available moneys) will be adequate (a) to provide for the payment, as the same become due, of the principal of and interest on the Bonds, (b) to meet Operating Expenses, and (c) to discharge any other obligations arising under this Contract and the Resolutions."

■ There are many provisions in the contract safe-guarding the FPHA in regard to this subsidy, including provisions relieving the FPHA from paying the subsidy if the "Low-Rent character of the Project" is not maintained. In passing, it would seem to me that if the Authority should have breached the covenant contained in Section 3.07, the only party having the right to complain would be the FPHA. I hardly see how the tenants who happen to occupy the premises now, would have the right to complain of such a breach of a covenant in the contract between the Authority and the FPHA.

However, I am satisfied that there has been no such breach. Section 5.03 in part provides:

"To assure that the annual contributions will be strictly limited to the amounts and periods necessary, and in view of the fact that it is anticipated that *no annual contributions may actually be necessary during the War Housing Period,* the contribution to be paid on each Annual Contribution Date shall be calculated as follows: * * *" (Italics mine.)

Section 4.05 in part provides:

"The local Authority covenants that it will establish Rent schedules and operating budgets and conduct the administration of the Project so that throughout the period during which annual contributions are payable by the FPHA, there will, with respect to each Fiscal Year, be available for deposit in the Debt Service Fund from the Revenues, *the largest amount consistent with the maintenance of the Low-Rent character of the Project* and with the provisions of this Contract and the Resolutions, it being the purpose of this cove-

nant to assure that annual contributions will be strictly limited to the amounts and period necessary to assure the Low-Rent character of the Project." (Italics mine.)

As heretofore stated, the Merrimack Park Project will eventually revert to its originally intended status as a "Slum Clearance" project, with low rentals. To maintain the Project and amortize the debt, it will then be obviously necessary to use all the subsidy which it is possible to obtain. The increased rental schedules have both been approved by the FPHA, which is in effect a certification by that Authority that the Low-Rent character of the Project has been maintained. It is not seriously contended by the plaintiffs that the Low-Rent character of the Project has not been maintained, their principal contention in this regard being that the present rentals in the Merrimack Park Project are higher than the rentals in the Ben Moreel Project. It does not appear in the record, but it was asserted by counsel in argument and not controverted, that the Ben Moreel Project has a status entirely different from the Merrimack Park Project. The Ben Moreel Project was built by the Navy on land owned by the Navy, and is operated exclusively by the Navy for its own personnel, funds for its construction and funds to cover its deficits being obtained by direct appropriation of Congress included in the Naval Budget.

■ It is therefore my conclusion that it is within the discretion of the defendant Authority to fix its rentals so as to necessitate the use of the subsidy in any year, or not, subject of course to the approval of the FPHA, and that there has been no abuse of this discretion.

(2) As to plaintiffs' contention that War or Navy Department approval of the increased rentals was necessary, it is true that 42 U.S.C.A. § 1504 in part provides:

"The Navy or War Department or the Authority, in the administration of any project developed for the purposes of sections 1501-1505 of this title, shall fix rentals for persons engaged in national defense activities and their families which will be within their financial reach, and the Au-

thority, in any contract for financial assistance or any lease of such a project, shall require the fixing of such rentals."

■ However, it is sufficient answer to this contention to observe that a consideration of Sections 1501–1505 shows that housing projects to be undertaken by the Navy Department, the War Department or the United States Housing Authority were authorized, and obviously that Agency which developed a project was authorized to fix rentals therein. Neither the Navy nor the War Department has had any part whatsoever in the development or operation of the Merrimack Park Project, and obviously neither the Navy nor the War Department has any authority over the fixing of rentals therein.

■ (3) As to the question of the jurisdiction or control of the Office of Price Administration over this Project, it is idle to speculate whether or not this Agency had such jurisdiction or control. If the O.P.A. did have jurisdiction and control, it has approved the increased schedule of rentals. As to plaintiffs' contention that such approval was erroneous, such a contention comes too late here. If the approval of the O.P.A. was unfair or erroneous, the exclusive remedy of anyone having the right to complain would have been to file a complaint with the Emergency Court of Appeals. United States v. Hansen, D.C., 52 F.Supp. 693, affirmed 7 Cir., 143 F.2d 7. See also Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834.

■ (4) As to plaintiffs' contention that the increases were improper because they would produce revenues sufficient to amortize the project in less than sixty years, a mere glance at Section 2.04 of the Contract constitutes a sufficient answer to this contention. The only reference to a sixty-year period therein contained is the provision that " * * * in no event shall the maturity of any bond exceed sixty years from the date of this Contract." In other words, the amortization period, by the contract, has an outside limit of sixty years, but nowhere do I find any requirement that the Authority shall not provide for amortization within a lesser period of years.

From all of the above, it will appear that it is my conclusion that the defendant, Norfolk Redevelopment and Housing Authority, in establishing the increased schedule of rentals for the Merrimack Park Project, acted within its sound discretion and not in contravention of any provision of law or contract. Such increases have been approved by the Public Housing Administration (successor to the Federal Public Housing Authority), and none of the tenant plaintiffs herein has any just cause of complaint.

It follows that an order will be entered granting a summary judgment for the defendant.